**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| | ) | No. 10 C 3034 |
| v. | ) | |
| | ) | Judge John A. Nordberg |
| NEDRA CHANDLER, Warden, | ) | |
| Dixon Correctional Center, | ) | |
| | ) | |
| | ) | |
| RESPONDENT | ) | |

**MEMORANDUM OPINION AND ORDER**

     Respondent filed a 48-page Answer requesting that we dismiss all of petitioner Arthur Mitchell's claims in his habeas corpus petition and that we decline to issue him a certificate of appealability. For the reasons set forth below, we grant both requests.

     In 1995, petitioner was convicted of first degree murder for killing Ricky Neal. Petitioner admitted that he killed Neal by hitting him with two bricks but claimed he acted in self defense. The killing arose out of a dispute when Neal was working on petitioner's car in the back yard of Neal's mother's house. Petitioner and two women were present while Neal began changing spark plugs. As he was working, Neal would periodically stop and get into the car and smoke crack cocaine with the two women. Petitioner, standing in the yard, objected each time and told Neal to quit smoking crack while working on his car. Eventually, petitioner told Neal to stop and offered to pay him $20 instead of the $40 he had earlier promised to pay Neal. According to petitioner, Neal became upset and attacked petitioner twice with a wrench. Petitioner responded by hitting Neal several times with a brick. The prosecutor painted a different picture. He argued that petitioner killed Neal by hitting him twice in the back of the head while Neal was lying face down on the ground. The jury believed the prosecutor's version of events, and petitioner received a sentence of 57 years.

Thereafter, petitioner filed a direct appeal to the Illinois Appellate Court asserting numerous claims.[1] In 1997, the Illinois Appellate Court affirmed the conviction. After his petition for leave to appeal was denied by the Illinois Supreme Court, petitioner filed a *pro se* post-conviction petition in Illinois state court raising numerous claims. (Pet. Resp. at 6.) He amended his petition several times. (*Id.*) The trial court denied his claims, and petitioner appealed to the Illinois Appellate Court. He asserted two arguments: (a) his trial counsel was ineffective for failing to request a jury instruction on second degree murder based on sudden and intense passion resulting from serious provocation; and (b) the trial court erroneously denied petitioner an evidentiary hearing on his claim that Sheila Mitchell (one of the two women in the car) gave false testimony when she denied making a deal with the State to testify against petitioner. (*Id.*) The Appellate Court affirmed with one Justice dissenting. In 2010, petitioner filed a *pro se* habeas petition with this Court asserting numerous claims. They are listed in his response brief at pp. 7-9; by this Court's count, there are 29 claims.

Respondent filed an Answer seeking to dismiss all claims under various arguments. Thereafter, this Court granted petitioner's request for counsel, and appointed Curt J. Schlom of the law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP. Appointed counsel filed a 32-page response brief, and respondent filed a reply brief.

## Analysis

Although petitioner's appointed counsel in his response brief has set forth argument for all of petitioner's 29 original claims, counsel places most weight on two arguments, which were the two relied upon by the dissenting Justice in the appeal of petitioner's post-conviction petition. (*Id.* at 1.) First, his trial counsel was ineffective because he failed to seek a jury instruction for second degree murder based on provocation. Second, the State violated due process by using and then failing to correct the allegedly false testimony of Sheila Mitchell. We will focus our discussion on these two claims.

**I.  Failure To Give An Additional Second Degree Murder Instruction.**

At trial, petitioner's counsel convinced him that, in addition to an instruction on first degree murder, the jury should be instructed on second degree murder based on an unreasonable belief in self-defense. (*Id.* at 12-13.) Petitioner initially did not want a second degree instruction

---

[1] The claims were: (a) whether the trial court erroneously permitted jurors to be questioned outside the presence of petitioner; (b) whether the trial court erroneously failed to provide jurors with written copies of the first and second degree murder instructions; (c) whether the trial court erroneously permitted the jury to view autopsy photos of Neal's skull; (d) whether the trial court erroneously permitted the State's attorney to introduce evidence relating to Petitioner's initial silence following his arrest and erroneously permitted the State's attorney to highlight such silence during closing argument; and (e) whether petitioner was denied the right to a fair trial and proven guilty beyond a reasonable doubt. (Pet. Resp. at 5.)

but was eventually convinced by counsel, after discussion with the Judge, that this instruction should be given. Petitioner now asserts that his trial counsel also should have asked for an additional second degree murder instruction, one based on provocation. If this instruction had been given, then the jury would have been presented with two theories for second degree murder – one based on an unreasonable belief in self-defense, which was given, and the other based on provocation, which was not given. The latter defense arises when a person "is acting under a sudden and intense passion resulting from serious provocation by the individual killed." (*Id.* at 15, *citing* 720 ILCS 5/9-2(a).) One type of serious provocation is "mutual quarrel or combat" and another is "substantial physical injury or assault." (*Id.*, *citing People v. Tenner*, 157 Ill.2d 341, 371 (1993).)

Petitioner now claims that there was enough evidence to justify this additional second degree murder instruction based on a mutual quarrel theory. Specifically, he states that he "testified [at trial] regarding a mutual quarrel with Neal, including by way of a dispute over Neal smoking cocaine, conflict over Neal's work on Petitioner's car, and disagreement regarding how much should be paid for the work that Neal performed." (*Id.* at 16.)

Petitioner recognizes that to succeed on an ineffective assistance of counsel claim, he must meet two requirements: (i) counsel's performance was deficient; and (ii) the deficient performance prejudiced the defense. (*Id.* at 14; *Strickland v. Washington*, 466 U.S. 668, 687 (1984).)

As to the first requirement, we find that petitioner has not set forth evidence to suggest that his counsel's performance was deficient. Petitioner concedes that his trial counsel took the position that petitioner was acting in self defense, a theory at odds with his new provocation theory. (Pet. Resp. at 18.) It is clear from a review of the transcript that counsel took great effort to portray petitioner as acting in a calm manner, under control, and only as needed to defend himself. For example, on direct examination, petitioner's counsel asked him the following:

> Q. Did you have any [] animosity toward Ricky or did you have any bad feelings toward Ricky before he hit you with the wrench?
>
> A. I didn't. I haven't seen Ricky within about nine years.

(Tr. at 66.) On cross-examination, petitioner was asked whether he got upset with Neal when Neal would not stop smoking crack. Petitioner answered that he "wouldn't call [himself] upset." (*Id.* at 76.) Was he mad when Neal decided to jack up the car, which petitioner did not want him to do? Again, petitioner insisted he "wasn't upset." (*Id.* at 80.) On redirect, his trial counsel's first two questions made clear that his theory was that petitioner acted out of self defense and not because of a quarrel:

> Q. Mr. Mitchell, were you upset enough at Ricky Neal somking cocaine to take a brick and hit him with it?

>   A.   No.
>
>   Q.   And again, Mr. Mitchell, did you hit Ricky Neal with a brick in order to defend yourself?
>
>   A.   I hit Ricky Neal with the brick and in my own self-defense. I just wanted to leave.

(*Id.* at 88-89.)

This testimony shows that counsel clearly chose a self-defense theory over a mutual quarrel strategy. This was not unreasonable and is the type of tactical choice a defense counsel often must make. Petitioner's position now is that it would not have hurt anything to simply include the alternative instructions about quarrel. But his trial counsel reasonably could have concluded that this alternative instruction – one at odds with his theory of the case – would only confuse the jury and undermine the strategy counsel had already adopted.

We also find that petitioner cannot meet the second *Strickland* requirement of showing prejudice. As stated above, given that counsel never presented evidence to the jury supporting a quarrel theory, it is hard to see how a reasonable jury could have relied on such a theory. For the jury to have convicted petitioner, it had to conclude that petitioner's story of what happened was fabricated in several respects. Petitioner's explanation for how Neal was killed differed dramatically from the prosecution's theory. The prosecutor argued that petitioner killed Neal by hitting him twice with a brick in the back of the head while Neal was lying face down in the gravel, defenseless and perhaps unconscious from an earlier brick hit to the right eye. In stark contrast, petitioner testified that Neal attacked him with a wrench and that he responded by grabbing a brick and hitting Neal above the eye. Petitioner claims that Neal, with blood dripping down the front of his face, attacked petitioner a second time by swinging the wrench. This time, petitioner picked up a different brick and, while standing several feet away, tripped on his coat thereby causing the brick to fly out of his hand and somehow hit Neal on the *back* of the head. Although Neal was facing petitioner at the time, he apparently ducked in a way to expose the back of his head. This explanation accounts for the first blow to the back of the head. The second blow came when Neal, after being hit to the back of the head by the brick, stood straight up and then fell straight back like a tree being chopped down. As petitioner testified, "Rick didn't bend no knees, no nothing. Rick fell like a tree." (*Id.* at 61.) Petitioner's theory is that the second blow to the back of Neal's head occurred when Neal fell onto a rock on the ground. Petitioner testified at length about these facts.

The jury had to choose between these two starkly different versions of what happened. After listening to petitioner's testimony, the jury convicted him of first degree murder. It is unreasonable to suppose that a jury would have found him guilty of only second degree murder based on the mutual combat theory if it did not believe his version of what happened was truthful. As the prosecutor argued at trial, the only medical expert testified that petitioner's explanation that the second blow to Neal's head was caused by a fall onto a rock was not

"likely." (*Id.* at 166.) Moreover, as noted above, petitioner testified repeatedly that he was only acting in self defense and just wanted to leave. For all the above reasons, this claim lacks merits.

## II. Due Process Claim Relating to Sheila Mitchell's Testimony.

Sheila Mitchell testified at trial that she was sitting in the back seat of the car and looked out and saw petitioner hitting Neal twice on the head with a brick using a football-style throwing motion as Neal was face-down on the ground. Many years later, while working on petitioner's state court post-conviction petition, petitioner's counsel (Eric Mitchell) allegedly interviewed Sheila Mitchell who stated that the prosecutors told her that she would not be charged as an accessory to murder if she testified against petitioner. (Pet. Resp. at 20.) Petitioner now asserts a claim that the State used and failed to correct the false testimony of Sheila Mitchell when she testified that she had not been promised anything for her testimony. (*Id.* at 19, 21.)

The state trial court rejected this claim, and the Illinois Appellate Court affirmed in 2009. The Appellate Court held that the claim was untimely because the new affidavit from Sheila Mitchell was unsigned and therefore could not toll the statute of limitations. (*Id.*) Respondent argues that any claim based on this affidavit is procedurally defaulted because the Appellate Court disposed of the argument on "independent and adequate state law grounds" – namely, the affidavit was unsigned. (*Id.* at 22; Answer at 27-28.) We agree.

Petitioner asks that we overlook this procedural default because he has demonstrated cause and prejudice and because he has shown that default of this claim would "result in a fundamental miscarriage of justice." *Id.* at 23 (citing *Smith v. McKee*, 598 F.3d 374, 387 (7th Cir. 2010). Petitioner states that Sheila Mitchell was the "State's sole eyewitness of the events leading to Neal's death, and the State's failure to acknowledge evidence that may have undermined Sheila Mitchell's credibility may have affected the judgment of the jury." (*Id.*)

We find that there is no prejudice. At trial, petitioner's defense counsel strongly attacked Sheila Mitchell's testimony on many grounds. Specifically, in closing, trial counsel stated:

> There [are] only two witnesses, only two, to this incident: my client and Sheila Mitchell. Now you folks can like or dislike Sheila Mitchell because that's not the question of whether you like or dislike Sheila Mitchell.
>
> > The question is: Is she a liar?
> > The question is: Is she a dopehead?
> > The question is: Is she an alcoholic?
> > The question is: Has she got a mental problem?
> > The question is: Has she been in the penitentiary?
> > The question is: Has she been convicted of theft?
>
> And you know the answers to all those questions. The answers are yes to all of them. She has been. She was in the penitentiary when she testified. She has a

>prior retail theft conviction. But, of course, she doesn't quite remember that. She has a mental problem that she has received disability payments on for ten years, an ongoing problem.
>
>And I hope you folks can keep track of what she drank and what she smoked. I don't know how you could, but I hope you did. Because it's anywhere from on that Sunday, starting from the morning until the time [of] this incident, anywhere from ten to fifteen drinks, ten to fifteen beers, ten to fifteen hits of cocaine.

(Tr. at 134-35.)

>In his rebuttal, the prosecutor basically agreed with this assessment, stating:
>
>Sheila Mitchell is a dopehead. She is an alcoholic. She is a criminal. She is a thief. She is all those things. But that's all I have got to work with. But you know what? If Sheila Mitchell was the only person that took that stand, if Sheila Mitchell was the only piece of evidence in this case, that man is not guilty. I wouldn't believe her as far as I could throw her. But you don't look at Sheila Mitchell's testimony alone.

(*Id.* at 143.) The prosecutor instead focused on how petitioner's testimony of what happened did not fit the physical evidence as described and analyzed by the forensic pathologist, Dr. Blum. (*Id.* at 147: "Because the physical evidence here, ladies and gentlemen, is uncontroverted. That is the [the only] true and perfect evidence that there is. Sheila Mitchell aside, the defendant aside, this is scientific testimony of what is observed."). The prosecutor discussed, among other things, the inconsistency between petitioner's testimony that he hit the victim over the left eye when it was undisputed that the injury was over the right eye; the unlikelihood that one of the blows to the back of the head could have been caused by petitioner tripping and inadvertently "throwing" a brick when Neal was facing petitioner; and the unlikelihood that the second blow to the back of the head could have been cause by Neal falling backward. (*Id.* at 149-53.)

In sum, we conclude that the additional information about Sheila Mitchell being promised leniency would not have changed the result in light of the many undisputed attacks already made on her credibility.

### III. Remaining Claims.

Petitioner's remaining claims, though numerous, are weaker and less developed than those above and are likewise insufficient. The State, in its detailed opening and reply briefs, has provided ample and persuasive arguments and authorities as to why these claims should be dismissed. We agree with and adopt those arguments. Many of these remaining claims are procedurally defaulted because petitioner failed to raise them through one complete round of state court review. (*See* Resp. Reply at 1.) Others are procedurally defaulted because the Illinois Appellate Court denied them on independent and adequate state law grounds. (*Id.*)

For reasons stated above, we conclude that these procedural defaults cannot be excused because petitioner has not demonstrated (among other things) prejudice from the alleged errors nor can he prove that he is actually innocent. The trial largely came down to whether petitioner's explanation of what happened was believable in light of the physical evidence and expert testimony of Dr. Blum. As summarized in respondent's reply brief (at pp. 8-13), there are numerous facts that cast doubt on petitioner's version of events. For example, petitioner claimed that Neal fell over backwards and hit the back of his head on a rock, yet the victim was found face-down with no debris on the back of his head. (*Id*. at 8.) Moreover, as already discussed above, petitioner's explanations of the two blows (one by an inadvertent "throw" that hit the back of Neal's head and another by a fall) both rest on difficult-to-believe presuppositions. The alleged constitutional errors underlying petitioner's remaining habeas claims would not remedy these problems. Petitioner's detailed and lengthy testimony was the focal point of the trial, and the jury ultimately did not believe his testimony.

For the reasons stated above, the petition for writ of habeas corpus is denied in its entirety. After denying a habeas petitioner, we are directed to then determine whether a certificate of appealability should be issued. *See* Habeas Rule 11(a). A certificate of appealability should be issued only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Moreover, if the petition is denied on procedural grounds, a certificate may be issued only if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, we conclude that the above rulings are not debatable among jurists of reason and therefore decline to issue a certificate of appealability.

## Conclusion

Petitioner's writ of habeas corpus is denied. The Court declines to issue a certificate of appealability. Finally, the Court wishes to thank appointed counsel, Curt Schlom of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, for his vigorous and able *pro bono* representation of petitioner.

**ENTER:**

**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** September 25, 2013